Joshua D. Hurwit (ISB No. 9527)
Faustine A. Moulton (ISB No. 12856)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: 208.342.5000
JDHurwit@hollandhart.com
FAMoulton@hollandhart.com

*Attorneys for Plaintiff Click Sales, Inc. d/b/a ClickBank*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| CLICK SALES, INC., a Delaware corporation, d/b/a CLICKBANK,<br><br>Plaintiff,<br><br>v.<br><br>BHEVER COMPANY LLP, a limited liability partnership organized under the laws of England and Wales, d/b/a BHEVER,<br><br>Defendant. | Case No. 1:26-cv-753<br><br>**COMPLAINT** |

Plaintiff Click Sales, Inc. ("ClickBank"), by and through its undersigned counsel, alleges as follows against Defendant BHEver Company LLP ("Defendant" or "BHEver"):

## I. INTRODUCTION

1. This is an action to recover no less than $1,192,612.51 that BHEver owes ClickBank under the ClickBank Client Contract. BHEver sold products through ClickBank's platform and, in doing so, agreed to reimburse ClickBank for customer refunds and chargebacks. Between February and October 2026, BHEver incurred customer refunds and chargebacks that ClickBank returned to consumers. BHEver's accounts experienced chargeback rates far exceeding

ClickBank's acceptable threshold, and BHEver also incurred a $62,500 assessment by Mastercard for compliance findings and fraud complaints. ClickBank covered the customer refunds and sought repayment of the amount of those refunds from BHEver. ClickBank invoiced BHEver for the amounts owed and made written demand for payment, but BHEver has failed to pay or to even respond.

2. ClickBank therefore brings this action for breach of contract and, in the alternative, account stated or unjust enrichment, and seeks damages, interest, attorney fees, and costs.

## II. PARTIES

3. Plaintiff Click Sales, Inc. ("ClickBank") is a corporation organized under the laws of Delaware with its principal place of business at 1444 S. Entertainment Ave., Suite 410, Boise, Idaho 83709. ClickBank operates a global e-commerce platform and payment-processing service through which third-party sellers ("Vendors") sell digital and physical products to customers and through which ClickBank processes customer payments, refunds, and chargebacks when necessary under its contract with Vendors. ClickBank is a citizen of Delaware and Idaho for purposes of diversity jurisdiction.

4. Defendant BHEver Company LLP ("BHEver") is a limited liability partnership organized under the laws of England and Wales, Company House No. OC455687, with its registered office at 27 Old Gloucester Street, London, United Kingdom, WC1N 3AX. On information and belief, Defendant does business as and holds itself out under the brand "Grupo BHEver" (website www.grupobhever.com). Matheus Rockenbach is a member of Defendant and signed the pricing Addendum as "Founder." Defendant is a vendor that sold products through ClickBank's platform after accepting the terms of ClickBank's "Client Contract," which is referred to as the "Agreement" and attached hereto as **Exhibit 1** and is incorporated by this reference.

5. Upon information and belief, Defendant's members, including Matheus Rockenbach, are citizens of foreign states, including, on information and belief, Brazil. Upon information and belief, none of Defendant's members is a citizen of Idaho or Delaware. Because Defendant is a limited liability partnership, for purposes of diversity jurisdiction it takes the citizenship of each of its members. Accordingly, Defendant is a citizen of foreign states, including, on information and belief, Brazil, and is not a citizen of Idaho or Delaware.

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this is a civil action between a citizen of a State (ClickBank, a citizen of Delaware and Idaho) and citizens of foreign states (Defendant, whose members, including Matheus Rockenbach, are on information and belief, citizens of Brazil), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant because, pursuant to Section 18(a) of the Agreement, Defendant agreed that any suit arising under the Agreement "must be brought exclusively in federal or state courts located in Boise, Idaho" and stipulated that it is subject to the personal jurisdiction of those courts.

8. In addition, this Court has personal jurisdiction over Defendant because it has transacted business in the District of Idaho with the purpose of realizing pecuniary benefit and, at all times relevant hereto, has had material, continuous, purposeful, and voluntary contacts within the District of Idaho.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Defendant's use of the ClickBank platform, and ClickBank's administration of Defendant's

accounts, processing of payments, and issuance of refunds and chargebacks from its offices in Boise, Idaho. Venue is also proper under 28 U.S.C. § 1391(c)(3) because Defendant is not a resident of the United States and therefore may be sued in any judicial district. Additionally, the Agreement's forum-selection clause (Section 18(a)) requires that actions arising out of or related to the Agreement be brought exclusively in the federal or state courts located in Boise, Idaho, and Defendant has waived any objection to the inconvenience of the forum through the Agreement.

## IV. FACTUAL ALLEGATIONS

### A. The ClickBank Platform and Client Contract

10. ClickBank operates an internet-based retail marketplace that facilitates the sale of digital and physical products by third-party vendors to consumers worldwide. ClickBank's platform enables vendors to list products, process consumer transactions, and pay affiliates who promote the vendors' products.

11. All vendors using the ClickBank platform, including BHEver, are required to accept the Agreement, commonly referred to as the ClickBank Client Contract. The Agreement was last updated July 1, 2026, and governs the relationship between ClickBank and its vendors like BHEver. During the account registration process, all users are required to acknowledge they have reviewed and accept the terms of the Agreement. By accepting the Agreement, the vendor agrees to be bound by all of its terms, including any subsequent modifications and all policies incorporated by reference.

12. The Agreement incorporates by reference several ClickBank policies, including the Accounting Policy and the Return and Subscription Cancellation Policy (the "Return Policy"). A true and correct copy of the Accounting Policy is attached hereto as **Exhibit 2**, and a true and correct copy of the Return Policy is attached hereto as **Exhibit 3**.

13. Pursuant to Section 3(m) of the Agreement, each vendor must establish a Seller Return Policy that provides for a refund period of up to sixty (60) days, unless ClickBank consents in writing to a different period. Section 3(n) requires the vendor to conspicuously post the Seller Return Policy. Section 3(o) provides that ClickBank may alter or override the Seller Return Policy if the vendor's returned or charged-back sales are excessive.

14. Section 3(l) of the Agreement provides that the vendor warrants that all sales comply with the operating rules of payment networks and card brands, including Mastercard.

15. Section 12(a) of the Agreement provides that the vendor shall indemnify ClickBank for all Losses (including reasonable attorney fees) arising from any third-party demand, complaint, or claim in connection with the vendor's use of the ClickBank services, products, or promotions. This indemnification obligation arises from several representations and warranties that a vendor agrees to in order to use ClickBank's services, including, but not limited to:

a. Section 3(b), under which a vendor agrees that its products comply with the laws and regulations of its country;

b. Section 3(k), under which a vendor agrees to comply with all applicable laws, rules, and regulations; and

c. Section 11(a), under which a vendor agrees that its products do not violate privacy rights, contain unlawful materials, or violate FTC rules and other regulations.

16. As a part of ClickBank's commitment to quality customer service and satisfaction, under the Accounting Policy "Returned Sales" section, ClickBank views product returns as evidence of customer dissatisfaction, and encourages sellers to minimize the number of returned sales. When a sale is returned, the customer typically receives a 100% refund (partial refunds are

allowed, and in some cases with physical products, ClickBank allows for full refunds minus shipping and handling), and the corresponding payouts are debited from the seller's account. ClickBank assesses various fees against the Seller for returned sales, due to the direct processing costs and other costs it incurs in connection with returned sales.

17. Under the Accounting Policy "Charged Back Sales" section, when a customer disputes a charge through their bank or credit provider the purchase is "charged back." Chargebacks cost ClickBank money and are managed to maintain its reputation as a reliable provider of internet retail services. Therefore, chargebacks are similarly debited back from the seller's account, with chargeback fees ranging from $22 to $49 or more depending on the chargeback rate.

18. Under the terms of the Accounting Policy, if a vendor's account experiences a negative balance for any reason, ClickBank may withdraw funds from any other accounts the vendor controls, seize any available funds to cover the deficiency, and/or invoice the vendor for the deficiency.

19. Similarly, under Sections 4(c) through 4(e) of the Agreement, ClickBank may suspend or terminate a vendor's account and retain funds if the account experiences or is anticipated to experience a negative balance, and ClickBank may withhold funds to secure the vendor's liabilities.

20. Section 18(a) of the Agreement provides that Idaho law governs; that actions arising out of or related to the Agreement must be brought exclusively in the federal or state courts located in Boise, Idaho; that the user submits to in personam jurisdiction and venue and waives any inconvenient-forum objection; and that the user agrees to indemnify ClickBank for all reasonable attorney fees and costs in any action in which ClickBank is the prevailing party. Section

18(a) waives the right to a jury trial. Section 18(h) provides that remedies are cumulative. Section 18(m) provides that the forum and fee provisions survive any account termination.

### B. The Client Contract Addendum With BHEver

21. In addition to the Agreement, ClickBank and BHEver entered into a Client Contract Addendum (the "Addendum"). On information and belief, the Addendum was executed via DocuSign by Matheus Rockenbach, in his capacity as "Founder" of Defendant, on March 11, 2026, and countersigned by ClickBank on March 12, 2026. The Addendum is effective as of March 12, 2026, and applies to the group of BHEver's accounts (through the Addendum's reference to founder Matheus Rockenbach's name for BHEver). A true and correct copy of the Addendum is attached hereto as **Exhibit 4**.

22. The Addendum is incorporated into and governed by the Agreement. In the event of a direct conflict between the Addendum and the Agreement, the Addendum controls. The Addendum applies to all ClickBank accounts owned and controlled by BHEver (the "account group").

23. The Addendum contains pricing tiers, including discount tiers that require $8,000,000 in net sales in the prior month and a chargeback rate of 2.35% or below.

24. Section 8 of the Addendum ("Orderly Exit") provides: "If Vendor chooses to, or is required to cease or substantially reduce sales volume, Vendor is obligated to conduct an orderly exit. Vendor is responsible for all future returns and financial obligations. This includes any returns in excess of reserves retained by ClickBank (negative balances). In that event, and upon five (5) days written notice, ClickBank may, at its option: (1) invoice Vendor for the full amount of the negative balance, payable in 30 days from the invoice date; (2) withdraw the negative balance amount… and/or (3) recover the negative balance amount by additional fees on future sales."

## C. BHEver's Excessive Refunds and Chargebacks

25. BHEver registered one or more ClickBank vendor accounts and accepted the Agreement, including those policies incorporated by reference, at the time of registration.

26. BHEver sold products through the ClickBank platform and ClickBank performed under the Agreement and the Addendum by sending to BHEver payouts and wholesale proceeds.

27. BHEver failed to disclose that its products had quality issues that caused an extraordinary number of consumers to seek refunds or contact their credit card company to submit a chargeback.

28. BHEver's accounts experienced extraordinary and excessive refunds and chargebacks. ClickBank's acceptable chargeback threshold generally is under 2%. BHEver's accounts had quality chargeback rates ranging from approximately 5% to almost 16%, far exceeding acceptable levels.

29. To maintain its reputation of selling quality products and commitment to consumer satisfaction, ClickBank funded the refunds and chargebacks owed to consumers and payment networks, debited them against BHEver's balance, applied any available funds and reserves, and invoiced the remaining deficiency.

30. As a result of the excessive refunds and chargebacks resulting from undisclosed quality issues with its products, BHEver's account group experienced a substantial negative balance.

31. Each refund or reversal that ClickBank issued in connection with sales attributable to BHEver was approved pursuant to one or more grounds authorized by the Return Policy.

32. Under the Return Policy's "Returns and Commission" section, distributions from returned sales are debited back from the corresponding seller accounts. Accordingly, distributions credited to BHEver as seller on returned sales were subject to debit-back from BHEver's account.

### D. Mastercard Compliance Assessment

33. On July 15, 2026, ClickBank notified BHEver via email that Mastercard had issued a final assessment regarding compliance findings and fraud complaints specifically linked to products processed under BHEver's account group. The Return Policy authorizes ClickBank to reverse sales to comply with applicable payment-network, payment-processor, and payment-provider rules and requirements, including the rules of credit card networks such as Mastercard.

34. ClickBank passed through the $62,500.00 Mastercard assessment to BHEver. Due to insufficient funds in BHEver's account, this amount was added to BHEver's outstanding invoiced balance on July 15, 2026.

### E. Invoices and Demand for Payment

35. In accordance with the Agreement, the Accounting Policy, and the Return Policy, ClickBank issued the following invoices to BHEver for the negative balances in BHEver's account group:

a. Invoice No. 2026-187, dated June 30, 2026, in the amount of $358,944.69;

b. Invoice No. 2026-189, dated July 10, 2026, in the amount of $343,704.32; and

c. Invoice No. 2026-0801, dated August 3, 2026, in the amount of $427,463.50.

36. Together with the $62,500.00 Mastercard assessment, BHEver owes ClickBank a total of $1,192,612.51.

37. BHEver did not respond to or object to any of the foregoing invoices.

38. On August 11, 2026, counsel for ClickBank sent a demand letter to BHEver via email and certified mail, demanding payment of the full outstanding balance and a response by August 18, 2026. BHEver failed to pay or to respond. Attached to this Complaint as **Exhibit 5** is a true and correct copy of the Demand Letter.

39. ClickBank reserves the right to amend this Complaint to include additional amounts as refunds and chargebacks continue to accrue and additional damages are identified.

## V. CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (Against Defendant)

40. ClickBank repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

41. The Agreement, the Accounting Policy, the Return Policy (each incorporated into the Agreement), and the Addendum constitute valid and enforceable contracts between ClickBank and BHEver. BHEver agreed to the Return Policy's "Returns and Commission" debit-back provisions.

42. ClickBank performed all conditions, covenants, and obligations required of it under the Agreement, the Accounting Policy, and the Return Policy, including processing and funding customer refunds and applying the Return Policy's authorized debit-backs to the applicable seller accounts, or was excused from performance.

43. BHEver breached the Agreement, the Accounting Policy, and the Return Policy by, among other things:

a. Failing to pay the negative balance invoices issued by ClickBank in accordance with the Accounting Policy and the Return Policy's debit-back provisions,

including Invoice Nos. 2026-187, 2026-189, and 2026-0801, totaling $1,130,112.51;

b. Failing to reimburse ClickBank for the $62,500.00 Mastercard compliance assessment passed through to BHEver;

c. Breaching the warranty in Section 3(l) of the Agreement that all sales would comply with the operating rules of payment networks and card brands, including Mastercard; and

d. Failing to indemnify ClickBank for Losses arising from third-party claims in connection with BHEver's use of the ClickBank services, as required by Section 12(a) of the Agreement.

44. As a direct and proximate result of BHEver's breaches, ClickBank has suffered damages in an amount not less than $1,192,612.51, plus prejudgment interest at the rate of 12% per annum under Idaho Code § 28-22-104, plus additional amounts as may accrue.

**COUNT II**
**Account Stated**
**(Pleaded in the Alternative Against Defendant)**

45. ClickBank repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

46. ClickBank and BHEver had prior transactions giving rise to a debtor-creditor relationship.

47. ClickBank rendered statements of account to BHEver, setting forth the amounts owed, including: Invoice No. 2026-187, dated June 30, 2026; Invoice No. 2026-189, dated July 10, 2026; Invoice No. 2026-0801, dated August 3, 2026; and a July 15, 2026, email notification regarding the Mastercard Assessment being added to the outstanding invoices. On August 11,

2026, ClickBank rendered the Demand Letter via email and certified mail, setting forth the total amount owed.

48. BHEver received the invoices and failed to object to any of them within a reasonable time. By its silence and failure to object, BHEver assented to the correctness of the stated accounts.

49. An account stated in the amount of $1,192,612.51 exists between the parties.

50. BHEver has failed and refused to pay the account stated. As a result, ClickBank has been damaged in an amount not less than $1,192,612.51, plus prejudgment interest at the rate of 12% per annum under Idaho Code § 28-22-104, plus additional amounts as may accrue.

**COUNT III**
**Unjust Enrichment**
**(Pleaded in the Alternative Against Defendant)**

51. ClickBank repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

52. In the alternative, should the Court determine that no enforceable contract exists between ClickBank and BHEver, BHEver was unjustly enriched at ClickBank's expense.

53. ClickBank conferred a benefit upon BHEver by crediting wholesale proceeds and payouts to BHEver's account(s) at the time of each consumer sale. When those sales were subsequently refunded or charged back, ClickBank funded the refunds and chargebacks owed to consumers and payment networks. BHEver received and retained the payouts on sales that ClickBank refunded to customers under the Return Policy, as well as on sales that were charged back, despite the fact that ClickBank ultimately bore the financial cost of the refunds and chargebacks.

54. BHEver appreciated and had knowledge of the benefit conferred by ClickBank.

55. Under the circumstances, it would be inequitable for BHEver to retain the benefit of those payouts without paying for the refunds and chargebacks that ClickBank funded on BHEver's behalf.

56. As a result, ClickBank has been damaged in an amount not less than $1,192,612.51, or such other amount as may be proven at trial, plus prejudgment interest.

## VI. REQUEST FOR RELIEF

WHEREFORE, ClickBank respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

1. Awarding ClickBank damages in the principal amount of $1,192,612.51, plus additional amounts that continue to accrue, in an amount to be proven at trial;

2. Awarding pre-judgment interest at the rate of 12% per annum under Idaho Code § 28-22-104 and post-judgment interest under 28 U.S.C. § 1961;

3. Awarding ClickBank its reasonable attorney fees and costs as permitted by the Agreement and applicable law, including:

(a) Section 18(a) of the Agreement, which provides for indemnification of all reasonable attorney fees and costs to the prevailing party;

(b) Section 12(a) of the Agreement, which requires the vendor to indemnify ClickBank for Losses, including reasonable attorney fees, arising from third-party demands or claims in connection with the vendor's use of the services (including the Mastercard assessment);

(c) Idaho Code § 12-120(3), as this action arises out of a commercial transaction;

(d) Idaho Code § 12-121; and

(e) Fed. R. Civ. P. 54(d).

4. Granting such other and further relief as the Court deems just and proper.

DATED: November 6, 2026

HOLLAND & HART LLP

By: */s/ Joshua D. Hurwit*
Joshua D. Hurwit
Faustine A. Moulton

*Attorneys for Plaintiff Click Sales, Inc. d/b/a ClickBank*

39819405_v6